BROATCH et al. v. BOYSEN et al.

(Circuit Court of Appeals, Eighth Circuit. October 13, 1916.)

No. 4409.

1. EQUITY ⊜⚏66—MAXIMS—HE WHO SEEKS EQUITY MUST DO EQUITY.

Where defendant, who agreed to obtain mining leases on Indian lands for the benefit of himself and others, expended considerable sums in an injunction suit to perfect his rights and prevent the Indian agent from excluding him from the reservation, defendant is entitled, having acquired land, to demand that complainants, who sought, on the theory of a trust, to share in such lands, pay their proportionate share of the fees and expenditures, though the agreement did not contemplate the hiring of counsel, for he who seeks equity must do equity.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 188–190; Dec. Dig. ⊜⚏66.]

2. TRUSTS ⊜⚏374—ENFORCEMENT—EXPENDITURES.

Complainants cannot prevent defendant from recovering a proportionate share of the expenditures on the ground that they were of no benefit to them.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 607–612; Dec. Dig. ⊜⚏374.]

3. TRUSTS ⊜⚏374—ENFORCEMENT—EXPENDITURES.

Though defendant conveyed the land to a mining company which he dominated, and though he disposed of a part of the stock, nevertheless complainants, before being entitled to share in the property, are bound to pay their proportionate share of expenses of prospecting the land and of preparing it for mining operations, whether the expenditures occurred before or after conveyance, or before or after commencement of the suit.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 607–612; Dec. Dig. ⊜⚏374.]

4. APPEAL AND ERROR ⊜⚏743(1), 760(1)—OBJECTIONS—RECORD.

Where neither the assignment of errors nor the brief of appellants referred to any pleadings or proof in the record which would have sustained the decree they contended should have been rendered, the contention must be overruled on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2999, 3095; Dec. Dig. ⊜⚏743(1), 760(1).]

5. TRUSTS ⊜⚏374—ESTABLISHMENT—DECREE—VALIDITY.

Where complainants sought to establish a trust in lands patented by complainant, and the decree establishing the trust and requiring conveyance directed that complainants should, as a condition precedent, pay their proportionate share of the expenditures incurred by defendant, the decree is not subject to objection on the ground that defendant had disposed of a part of the land and could not comply therewith, for in case of inability the court having jurisdiction might direct compliance so far as possible, with compensation for failure to convey a portion of the land.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 607–612; Dec. Dig. ⊜⚏374.]

Appeal from the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Action by William J. Broatch and others against Asmus Boysen and another. From the accounting and final decree, complainants appeal. Remanded, with directions to modify decree.

T. B. Hardin and Harold B. Elgar, both of New York City, for appellants.

John W. Lacey, of Cheyenne, Wyo. (Herbert V. Lacey, of Cheyenne, Wyo., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. The appellants challenge the accounting and final decree made by the court below pursuant to the decision of this court and its mandate in Broatch v. Boysen et al., 175 Fed. 702, 710, 99 C. C. A. 278. In April, 1899, Boysen agreed with the appellants and others that they would, at their joint expense, prospect for, and, if possible, obtain from the United States, a lease of a large tract of land in the Shoshone and Wind River Indian reservation in Wyoing available for coal and other minerals. Boysen in 1899 proceeded to acquire such a lease of 178,000 acres of land for 10 years. In March, 1905 (Act March 3, 1905, c. 1452, 33 Stat. 1016), Congress passed an act which gave him, the lessee, a preferential right for 30 days after the government surveys of the reservation were completed to locate and enter for $10 an acre 640 acres of mineral or coal land in a square form in that reservation. He then searched out, located, and entered the tract of land he was entitled to take, and the patent therefor was issued to him on May 19, 1907. In the year 1905 he organized the Asmus Boysen Mining Company, and after he had entered the land made a contract to convey it to that corporation. He expended large sums of money in prospecting for coal and for other minerals, in order that he might select, both for his lease and for his patent, land valuable for coal and for other minerals, and he expended much more in endeavors to develop mines upon these lands. After he had entered and secured the patented land, the appellants brought this suit against Boysen and the Boysen Mining Company to charge the patented land with a trust in their favor, and this court directed the court below to render a decree, and it did so:

"That an accounting be had of the amount expended by Boysen in acquiring the lease and the patented land and in the development thereof, and also of any amounts which he had received therefrom; that unless each of the complainants (appellants here) John T. Clarke and William J. Broatch pay to the defendant Asmus Boysen Mining Company, a corporation to whom the lands have been conveyed since the institution of this suit, the sum of two thousand dollars ($2,000), and in addition thereto the amount which one-sixteenth of said expenditures shall exceed the sum of $2,000, within 60 days after the accounting shall be closed and finally approved by the court, then the bill be dismissed as to them; that unless each of the complainants (appellants here) Robert C. Wertz and Charles J. Woodhurst pay to the defendant the Asmus Boysen Mining Company the amount which one-sixteenth of said expenditures exceeds the sum of $2,000, then the bill be dismissed as to each of them; and that in case any of them make the payment within 60 days, then the Asmus Boysen Mining Company shall convey to each of said four complainants who make such payment one-sixteenth interest in the said real estate described in the patent."

Pursuant to these directions the District Court took the accounting, found and adjudged that within 60 days from the date of its decree

each of the complainants Clarke and Broatch pay to the Mining Company $5,972.06, and each of the complainants Wertz and Woodhurst pay to the Mining Company $3,972.06, that upon payment by any of them of the amount required of him the Mining Company convey to. him one-sixteenth of the patented real estate, and that upon the failure of any of them to make such payment within 60 days after the entry of the decree the bill be dismissed as to him. The basis of this decree was that the court found that Boysen had legitimately expended in acquiring the lease and the patented land and in the development thereof $12,000 counsel fees, $6,803.10 as the price of the patented land, $61,875 in driving the Cross Cut tunnel, $16,000 in driving the Anderson tunnel, $3,000 in driving smaller tunnels, and $3,000 in sinking a shaft, making in the aggregate $102,678.10, and that he had received from the sale of stock of the Boysen Mining Company $39,125, so that he had expended $63,553.10 more than he had received.

[1] Counsel for the complainant challenge this accounting in various ways. They assail the allowance of the $12,000 for counsel fees on the grounds that the payment thereof was not within the trustee's authority under the agreement of April, 1899, that it was not reasonable compensation for the services, that the services were not performed until after the selection of the land by Boysen, and that the expenditure of this money was of no benefit to the complainants. The record contains persuasive proof that after Boysen, with much expense and toil, for which he has received no allowance in this accounting, had secured, by means of the act of March 3, 1905, the preferential right to locate and enter "not exceeding 640 acres of mineral and coal lands" in the Indian reservation, the Secretary of the Interior, through the Indian agent and the Indian police, prohibited and prevented him from entering upon the reservation, or surveying or prospecting any land thereon, for the purpose of exercising his preferential right and selecting his mineral and coal land. Thereupon he retained eminent counsel, who brought a suit for him in the court below for an injunction forbidding the Indian agent and his agents, servants, and employés from preventing Mr. Boysen from entering upon and prospecting the reservation, in order to make a selection of his tract of 640 acres of mineral and coal land. That suit was tried by Hon. John A. Riner, the same judge who personally took the accounting in this case, and he granted the injunction prayed. The Indian agent appealed to this court, and the decree below was here affirmed. It was only by means of this decree that Mr. Boysen was able to do the necessary prospecting and examining of the lands upon the reservation to warrant his selection of the land which the appellants are now so strenuously seeking to share with him. Boysen testified that he paid his counsel $12,000 for their services in that case, and no witness comes to deny it. Counsel for Boysen, at the hearing on the accounting before the court below, offered to prove the value of these services, if desired by opposing counsel, and the latter postponed that proof, and it was never made. But Judge Riner knew the counsel who brought and conducted the suit for the injunction, and the character and value of their services,

for they had tried that suit before him, and this court, which heard the appeal from his decree, is not entirely ignorant upon that subject, and our conclusion is that there was no error in his finding that those services were reasonably necessary and were reasonably worth $12,000.

Nor are the objections that the payment of these fees were not within the scope of the authority of the trustee under the old agreement of 1899, or that the services were rendered after the patented land was selected, fatal. It is conceded that neither this nor many other expenditures relating to this selection and development of the patented land were either contemplated by the parties, nor was the trustee in the old agreement of 1899 authorized by them to make or pay them. That is not the ground of their allowance by the courts. They rest on the maxim that he who seeks equity must do equity, that Boysen used the lease which he had acquired under the contract of 1899 to procure the preferential right to, and finally to procure, the patented land, that he hired and paid his counsel to bring the injunction suit, paid for the patented land, drove tunnels and sunk a shaft to prospect and develop it, that the appellants now seek the decree of a court of equity for a share in this land, which he thus selected and endeavored to develop, and that it is just and equitable that the grant of their prayer for a share in this property should be conditioned by the court, as it has been, by the requirement that they first pay to Mr. Boysen their proportionate share of the reasonable expenditures he has made in order to prospect, acquire, and develop the lease and the patented land. The counsel fees fall far within this maxim upon which their allowance rests, and the record proves that the services for which they were paid were rendered before the patented land was acquired, for the purpose of selecting and obtaining it.

[2] Another objection to the allowance of the amount paid for these fees is that the services for which this amount was paid were of no benefit to the appellants. The answer is they seek the land those services aided to secure, and since they were incurred and paid by Boysen in undoubted good faith, for the purpose of procuring this land, and the evidence satisfies they aided to do so, it would be inequitable to permit the appellants to share in it without paying their proportion of this legitimate expense of procuring it.

[3] Objection is made to the allowance of any amounts whatever for prospecting or developing the leased land or the patented land: (1) Because the evidence fails clearly and definitely to show that the amounts allowed by the court below were expended prior to the selection of the land, in order to make the selection, or prior to the commencement of this suit and the filing of the lis pendens herein. But there is substantial and persuasive evidence of the expenditure by Mr. Boysen of at least the amounts allowed for the purpose of acquiring the lease and the patented land, and for the purpose of developing the leased land and the patented land. The allowance of amounts expended by him in the development of these lands after they were selected, and after this suit was commenced and the lis pendens filed, fall equally under the mandate of this court, the decree for the accounting, and the maxim

that he who seeks equity should do equity. (2) That some of the amounts expended for development of the patented land were spent in prospecting for copper. But expenditures in developing the land by prospecting for copper within it fall in the same class as the expenditures last mentioned, and they were allowable for the same reason as were other expenses of development. (3) That a large portion of the amounts allowed for sinking the shaft and prospecting upon the patented property was made after the land was conveyed to the Boysen Mining Company, that all of these amounts were expended by the Mining Company for the benefit of its own stockholders, that they were not expended by Boysen as trustee, and that they were not expended until after the commencement of this suit. But the evidence convinces that the Boysen Mining Company was but the creature of Boysen, that he owned and controlled a majority of its stock, that he furnished, either directly or indirectly, substantially all the money, except the $39,125 obtained from the sale of some of its stock, charged against Mr. Boysen by the court below in the accounting, that was expended in sinking the shaft, prospecting upon and developing the patented property, and as the appellants ask the court to cause the Boysen Mining Company to convey to them their share of this property, it would be inequitable to do so without requiring them to pay their share of these expenditures in developing, whether Boysen made them before or after the conveyance to the Mining Company, or before or after the commencement of this suit.

[4] There was a provision in the agreement of 1899 that, if any of the parties to it failed to make the payments required of them under the contract, their interests in the partnership created thereby might be sold by the trustee on 30 days' notice; and it is assigned as error that the court below failed to decree the sale of 9 shares of other parties to that agreement than Boysen and the appellants. But no reference is found in the assignment of errors, or in the brief of appellants, to any pleadings or proof in the record which would have sustained any such decree, and none has been discovered.

[5] Complaint is made that the decree on the accounting requires each of the appellants to make the payment required of him within 60 days after the entry of the decree, and that it provides that in case any of them fails to do so the suit shall be dismissed as to him, because the title to 88 acres of the patented land is no longer in the Boysen Mining Company, and it cannot convey one-sixteenth interest therein to any of the appellants. But the decree requires the Boysen Mining Company to convey one-sixteenth interest of the patented land to each of the appellants upon his making the payment required of him. That conveyance is conditioned on the payment required, and in the nature of the case the payment is conditioned upon the conveyance, and ample power is vested in the court below to prevent injustice under this decree. If the Mining Company has not now the title and power necessary to convey one-sixteenth interest in the entire patented tract, it may yet acquire that title and power before any of the appellants is ready to pay the amount required of him, and the Mining Company may make the conveyance. If it cannot and does not do so, the

court below has ample jurisdiction and power, and may then exercise it by supplemental decree, or by modification of the decree for the accounting, so as to require the Mining Company to convey the one-sixteenth interest as far as it can do so, and to make compensation for its failure to convey one-sixteenth interest in the entire tract as is often provided in cases of specific performance of contracts. Fry on Specific Performance of Contracts (3d Ed.) §§ 1222, 1223, 1224; Pomeroy on Contracts (2d Ed.) § 438. The portion of the decree upon the accounting here challenged is in accord with the mandate and opinion of this court and with the decree for the accounting, and it is not erroneous.

It is assigned as error that the amount required by the decree upon the accounting to be paid by each of the appellants is $2,000 more than it should be. Appellees confess this error, and the record discloses the fact that it must have arisen, not from any mistake in the accounting which resulted in the finding of a balance of credit to Boysen of $63,533.10, but in the division of that sum by 16, and in the cases of Clarke and Broatch in the addition of $2,000 to that quotient. There was no other error in the decree. That decree, therefore, must be so modified that the amount required to be paid by each of the appellants Broatch and Clarke shall become $3,972.06, and the amount to be paid by each of the appellants Wertz and Woodhurst shall become $1,972.06.

Let the case be remanded to the court below, with directions to that court so to modify its decree, and, thus modified, that decree is affirmed.